**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **RAD MANUFACTURING, L.L.C.,** : | |
| **formerly known as RAD Wood** | |
| **Work Company, et al.,** : | |
| | **CIVIL ACTION NO. 3:16-2138** |
| **Plaintiffs,** : | |
| | **(JUDGE MANNION)** |
| **v.** : | |
| **ADVANCED FABRICATION** : | |
| **SERVICES, INC. t/d/b/a AFS** | |
| **ENERGY SYSTEMS,** : | |
| **Defendant.** : | |

## MEMORANDUM

Before the court is the defendant's motion to dismiss. (Doc. 8). The defendant seeks to dismiss the plaintiffs' amended complaint. (Doc. 5). For the foregoing reasons, the defendant's motion is **GRANTED**.

## I.  BACKGROUND

The plaintiff RAD Manufacturing, L.L.C. ("RAD") is an owner and operator of a wood floor manufacturing facility incorporated in Delaware with its principle place of business in Pennsylvania. The defendant Advanced Fabrication Services, Inc. ("AFS") is in the business of designing, troubleshooting, installing, maintaining, servicing, and repairing boilers and boiler control systems. AFS is incorporated in Pennsylvania and has its principle place of business in Pennsylvania. The plaintiff Indiana Lumbermens Mutual Insurance Company ("Lumbermens") insures and acts as subrogee to RAD. Lumbermens is incorporated in Indiana with its principle place of

business in Indiana. The plaintiff The Travelers Indemnity Company ("Travelers") reinsures and acts as subrogee to Lumbermens. Travelers is incorporated in Connecticut and has its principle place of business in Connecticut.

Prior to November 2014, RAD hired and contracted with AFS to design, fabricate, construct, program, assemble, install, inspect, test, maintain, repair, and service a boiler control system on RAD's premises. On November 2, 2014, the boiler dry fired causing damage to RAD's real property. The boiler control system was supposed to prevent dry fires by monitoring the level of cooling water in the boiler and shutting off the boiler if the level of water was below predetermined levels. The boiler control system did not operate as intended, leading to the dry fire. RAD submitted a claim to Lumbermens following the real property loss. Lumbersmens and Travelers have paid and may continue to pay in excess of two million dollars as compensation for that loss. RAD also suffered additional property losses of approximately $431,000.00 not covered by any insurance, which RAD seeks to recover. (Doc. 21 at 3).

On October 24, 2016, the plaintiffs filed a complaint in this court. (Doc. 1). The plaintiffs filed an amended complaint on November 4, 2016 as a matter of right. (Doc. 5). The plaintiffs' amended complaint alleged four claims against the defendant: (1) negligence—Count I; (2) strict liability—Count II; (3) breach of warranty—Count III; and (4) breach of contract—Count IV. RAD also commenced a civil action against the defendant in the Luzerne County Court

of Common Pleas by filing a praecipe for writ of summons. *RAD Mfg. LLC v. AFS Energy Systems*, No. 201600589 (Ct. Com. Pl. 2016). No complaint has been filed.

On November 23, 2016, the defendant filed the current motion to dismiss the plaintiffs' claims. (Doc. 8). A brief is support was filed on December 6, 2016. (Doc. 9). The defendant's motion seeks dismissal of the plaintiffs' amended complaint primarily based on the court's alleged lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). In the alternative, the defendant seeks dismissal of the plaintiffs' strict liability claim (Count II) and breach of warranty claim (Count III) based on Federal Rule of Civil Procedure 12(b)(6) and the plaintiffs' failure to state a claim. The defendant also moves for a more definitive statement with respect to the negligence claim (Count I) pursuant to Federal Rule of Civil Procedure 12(e), also in the alternative. The plaintiffs filed a proper brief in opposition on December 27, 2016. (Doc. 13).

On February 9, 2017, the court ordered the parties to submit supplemental briefs to aid the court's resolution of the jurisdictional issue. (Doc. 20). On February 23, 2017, the parties submitted their supplemental briefs per the court's order. (Docs. 21–22). The defendant's motion is now fully ripe for review.

## II.    STANDARD OF REVIEW

3

Rule 12(b)(1) provides for the dismissal of a complaint based on a "lack of subject-matter jurisdiction." FED. R. CIV. P. 12(b)(1). "A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of the court to address the merits of the plaintiff's complaint." *Vieth v. Pennsylvania*, 188 F. Supp. 2d 532, 537 (M.D. Pa. 2002). Because the district court is a court of limited jurisdiction, the burden of establishing subject matter jurisdiction always rests upon the party asserting it. *See Kokkonen v. Guardian Life. Ins. Co. of America*, 511 U.S. 375, 377 (1994). Generally, however, district courts "enjoy substantial flexibility in handling Rule 12(b)(1) motions." *McCann v. Newmann Irrevocable Trust*, 458 F.3d 281, 290 (3d Cir. 2006).

An attack on the court's jurisdiction may be either "facial" or "factual" and the "distinction determines how the pleading must be reviewed." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). A facial attack tests the sufficiency of the pleadings, while a factual attack challenges whether a plaintiff's claims fail to comport factually with jurisdictional prerequisites. *Id.* at 358; *see also S.D. v. Haddon Heights Bd. of Educ.*, 833 F.3d 389, 394 n. 5 (3d Cir. 2016). If the defendant brings a factual attack, the district court may look outside the pleadings to ascertain facts needed to determine whether jurisdiction exists, which is distinct from a facial attack. *Id.* If there are factual deficiencies, the court's jurisdictional determination may require a hearing, particularly where the disputed facts are material to finding jurisdiction. *McCann*, 458 F.3d at 290. Here, the defendant complains of factual

deficiencies. The plaintiffs do not dispute these facts and, instead, argue that jurisdiction is proper despite these deficiencies as a matter of law. The court disagrees.

## III.   DISCUSSION

The district court is a court of "limited jurisdiction." *Exxon Mobile Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). It "possess[es] only that power authorized by Constitution and statute." *Id.* "[A] federal court always has jurisdiction to determine its jurisdiction." *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010). When the court's jurisdiction is at issue, however, "it is incumbent upon the courts to resolve such doubts . . . before proceeding to a disposition on the merits." *Id.* (quoting *Carlsberg Res. Corpo. v. Cambria Sav. & Loan Ass'n,* 554 F.2d 1254, 1256 (3d Cir. 1977)).

District courts have original jurisdiction over federal question cases—those involving the Constitution, federal law, or treaties of the United States. 28 U.S.C. §1331. The district court also has original jurisdiction and serves as neutral forum for disputes between citizens of different states, between U.S. citizens and foreign citizens, and between U.S. citizens and foreign states where the amount in controversy exceeds $75,000.00—*i.e.*, diversity cases. 28 U.S.C. §1332. A district court may also exercise supplemental jurisdiction over claims "so related to claims in the action within

[the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367(a). Because the plaintiffs' claims present no federal question, this court's jurisdiction must be premised on either diversity of citizenship or supplemental jurisdiction. Neither form of jurisdiction is appropriate here. Further, the court cannot cure the jurisdictional defect.

### A.     The Court Lacks Diversity and Supplemental Jurisdiction.

Diversity jurisdiction requires complete diversity between the parties in the action. Otherwise stated, "presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original jurisdiction over the entire action." *Exxon Mobile*, 545 U.S. at 553. Complete diversity is an essential component of jurisdiction. Without it, the principle reason for conferring jurisdiction—to serve as a neutral forum and not favor home-state litigants—is eliminated. *Id.* at 553–54.

RAD's presence in this action destroys complete diversity in this action. For jurisdictional purposes, a corporation is deemed to be a citizen of its place of incorporation and its principle place of business. 28 U.S.C. §1332(c)(1). Based on allegations within the amended complaint, RAD is incorporated in Delaware, but has its principle place of business in Pennsylvania. Thus, RAD is deemed a citizen of both Delaware and Pennsylvania. Also based on allegations in the amended complaint, AFS is incorporated in and has its

principle place of business in Pennsylvania and is, therefore, also deemed a citizen of Pennsylvania. Because both corporations are deemed citizens of the same state, one plaintiff and the sole defendant, complete diversity is lacking.

Supplemental jurisdiction is also not appropriate. This means of conferring jurisdiction is premised on the existence of at least one claim where the court has original jurisdiction and relatedness to that claim. *See Exxon Mobile*, 545 U.S. at 558–59. Typically, supplemental jurisdiction is used to confer jurisdiction over a state law claim where diversity jurisdiction is lacking and there is at least one federal claim in the action. In that instance, the court may exercise supplemental jurisdiction if three requirements are satisfied: (1) the federal claim has sufficient substance to confer jurisdiction; (2) the state and federal claims derive from a common nucleus of operative fact; and (3) the claims are such that a plaintiff would expect to try all the claims in one proceeding. *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 275 (3d Cir. 2001). In addition, a court may exercise supplemental jurisdiction over claims against otherwise diverse citizens who do not satisfy the amount in controversy requirement so long as at least one plaintiff satisfies the requirement and the remaining claims are part of the same case or controversy. *Exxon Mobile*, 545 U.S. at 549. Here, there is no federal claim to which supplemental jurisdiction can attach, nor does the rule regarding the amount in controversy requirement apply.

Supplemental jurisdiction cannot be used, however, "when exercising jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332." 28 U.S.C. §1367(b). Unlike the amount in controversy requirement, it is not an appropriate means of conferring jurisdiction where there is incomplete diversity because without complete diversity a principle reason for conferring jurisdiction is eliminated. *See Exxon Mobile*, 545 U.S. at 553–54. There is no need for a neutral forum; the state will have citizens to protect on both sides of the aisle. *See id.* Therefore, "[i]ncomplete diversity destroys original jurisdiction with respect to all claims, . . . [leaving] nothing to which supplemental jurisdiction can attach." *Id.* at 554.

The plaintiffs do not argue that the complaint allegations regarding citizenship were made in error, a mere facial deficiency. Instead, the plaintiffs posit that supplemental jurisdiction is proper despite incomplete diversity. This is clear error. It has been clear within this circuit since 1972 that the doctrines of pendent or ancillary jurisdiction, now labeled supplemental jurisdiction by statute without distinction, are not applicable where complete diversity is lacking. *See Seyler v. Steuben Motors, Inc.*, 462 F.2d 181 (1972). Without a federal question and without complete diversity there is no claim to which supplemental jurisdiction can attach. *Exxon Mobile*, 545 U.S. at 554. Any case prior to or contrary to that proposition does not correctly state the current law.

The plaintiffs also cite to a case in this district, *Westra Construction, Inc. v. United States Fidelity & Guaranty Co.*, 546 F. Supp. 2d 194 (M.D. Pa. 2008),

8

as support for the position that supplemental jurisdiction is proper over a nondiverse party's claims. The plaintiffs' reliance on this case is misplaced. In *Westra*, the court asserted supplemental jurisdiction over the claim of a non-party seeking to intervene in the action whose presence would destroy complete diversity. *Westra*, 546 F. Supp. 2d at 200. The court held that supplemental jurisdiction could attach to a nondiverse intervenor's claim so long as the intervenor was not an indispensable party under Federal Rule of Civil Procedure 19 and the intervenor's claim formed part of the same case or controversy of the underlying claims. *Id.* at 199–200. The court's holding and analysis of the supplemental jurisdiction statute in *Westra* was informed by the long-standing, common law rule that "if jurisdiction exists at the time the action is commenced, such jurisdiction may not be divested by subsequent events[,]" including the intervention of parties. *Id.* at 199 (quoting *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991)). The statute did not abrogate or upset "the long-established judge-made rule that the presence of a nondiverse and not indispensable [] intervenor does not destroy complete diversity." *Mattel, Inc. v. Bryant*, 446 F.3d 1011, 1014 (9th Cir. 2006).

The reasoning in *Westra* is not directly applicable here. RAD is not an intervenor, but an original plaintiff in the action. There is no long-standing rule incorporated into the current jurisdictional statute to save the deficiency here. Moreover, the rules relied upon in *Westra* could not be applied here because, as the court will explain, RAD is not a dispensable party. Thus, incomplete

diversity, when coupled with a lack of a federal question, is fatal to the plaintiffs' request for this court to exercise supplemental jurisdiction over RAD's claims.

### B.    RAD is an Indispensable Party Under Rule 19.

The fact that complete diversity is lacking does not end the court's inquiry. Next, the court must determine if RAD can be dismissed from the action pursuant to Federal Rule of Civil Procedure 21 to allow the remaining plaintiffs to proceed in RAD's absence, curing the jurisdictional defect. Having reviewed the parties' supplemental briefs on this issue, the court finds that RAD, the insured, is an indispensable party that cannot be dropped from the action to allow the remaining plaintiffs to proceed. Therefore, the plaintiffs' action must be dismissed.

Although diversity is established at the time of filing, it is long-established that a court may make an exception to this rule and drop the offending party, so long as that party is dispensable to the action. *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570 (2004). Specifically, Rule 21 provides that "[o]n motion or on its own motion, the court may at any time, on just terms, add or drop a party." FED. R. CIV. P. 21. "Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time[,]" therein curing the jurisdictional spoiler. *Newman-Green, Inc. v. Alfonzo-Larrain,* 490 U.S. 826, 832 (1989); *see also Zambelli*, 592 F.3d at 420–21. Thus, the

10

court may dismiss RAD and proceed with this action so long as RAD is not indispensable to the action pursuant to Rule 19. *Id.* at 422.

Rule 19(a) explains what parties must be joined in the action as "necessary" or "required" parties if joinder is feasible. *Huber v. Taylor*, 532 F.3d 237, 247 (3d Cir. 2008).[1] If a party "should be joined under Rule 19(a) but joinder is not feasible because it would destroy the court's diversity jurisdiction, then the court must determine whether the absent party is 'indispensable' under Rule 19(b)." *Id.* As the rule states, "the court must determine whether, in equity and good conscience, the action should proceed among existing parties or should be dismissed." FED. R. CIV. P. 19(b). If the action must be dismissed under the factors listed in Rule 19 then the party is indispensable. *Huber*, 532 F.3d at 247. If the nondiverse party is dispensable then, pursuant to Rule 21, that party may be dropped to allow the remaining plaintiffs to proceed with their action. *See Zambelli*, 592 F.3d at 421.

---

[1] Although Rule 19 speaks of "required" parties due to 1966 amendments, courts still refer to the joinder of "necessary" parties, referencing pre-amendment terminology and case law that has carried over to the current and less formalized rule. *See, e.g., Disabled in Action of Pa. v. Se. Pa. Transp. Auth.*, 635 F.3d 87, 97 (3d Cir. 2011); *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007); *Golden Gate Nat'l Seniorcare, LLC v. Lane*, No. 3:CV-14-1957, 2015 WL 926432, at *2–3 (M.D. Pa. Mar. 4, 2015).

## I.     RAD is a necessary party to this action.

A party is a necessary or required party if "in that person's absence, the court cannot accord complete relief among existing parties." FED. R. CIV. P. 19(a)(1)(A). A party is also deemed necessary if the party has an interest in the action such that disposing of the interest in the party's absence might (1) "impair or impede the person's ability to protect the interest" or (2) "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." FED. R. CIV. P. 19(a)(1)(B)(i)–(ii). RAD is clearly a necessary party to this action.

RAD, Travelers, and Lumbermens are all real parties in interest in this partially subrogated action, with all entitled to sue and seek recovery for their losses. *United States v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 380–81 (1949); *Universal Underwriters Ins. Co. v. Tony DePaul & Sons, Inc.*, No. Civ.A. 01-0631, 2001 WL 1175146, at \*2 (E.D. Pa. July 25, 2001); *Hancotte v. Sears, Roebuck & Co.*, 93 F.R.D. 845, 846 (E.D. Pa. 1984). However, the court is particularly concerned with RAD's ability to protect its interest in the state court action if this court reaches judgment before the state court action. The decisions of this court are likely to have *res judicata* effects on RAD's separate action. Without RAD present here, RAD cannot fully protect its interest.

*Res judicata* or claim preclusion "prohibits parties involved in prior, concluded litigation from subsequently asserting claims in a later action that were raised, or could have been raised, in the previous adjudication." *Wilkes*

*ex rel. Mason v. Phoenix Home Life Mut. Ins. Co.*, 902 A.2d 366, 376 (Pa. 2006).[2] It acts as a shield from the burdens of "re-litigating a claim with the same parties, *or a party in privity with an original litigant,* and to protect the judiciary from the corresponding inefficiency and confusion that re-litigation of a claim would breed." *Id.* (emphasis added). Here, the salient issue is whether or not RAD, the insured subrogor, can be deemed to be in privity with Lumbermens and Travelers, the insurer subrogees.

In general, under Pennsylvania law, an insurer is in privity with its insured. *Greenway Ctr., Inc. v. Essex Ins. Co.*, 475 F.3d 139, 149 (3d Cir. 2007) (citing *Dally v. Pa. Threshermen & Farmers' Mut. Cas. Ins. Co.*, 97 A.2d 795 (Pa. 1953)). Chief Justice Saylor of the Pennsylvania Supreme Court, in a recent dissent, confirmed this general rule by indicating that a subrogee and subrogor would be deemed to be in privity for purposes of *res judicata*. *Liberty Mut. Ins. Co. v. Domtar Paper Co.*, 113 A.3d 1230, 1241–42 & n. 1 (Pa. 2015). There are exceptions to this general rule. There is an exception where the insurer's interests conflict with those of its insured. *Greenway Ctr.*, 475 F.3d

---

[2] The *res judicata* effect of a judgment from this court would be the same as the *res judicata* effect of a judgment from the state court. Although federal common law governs the preclusive effect of a federal court judgment, federal law instructs federal courts to turn to the substantive law of the state where the court sits when the court's jurisdiction is founded solely on diversity. *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 225 (3d Cir. 2016) (explaining the rule elaborated in *Semtek Int'l Inc. Lockheed Martin Corp.*, 531 U.S. 497 (2001)). Thus, Pennsylvania law applies to the effect of a judgment from this court as it would apply to the effect of judgment from a Pennsylvania court.

at 149. In addition, the insured will not be in privity where the insured was unaware of and did not authorize the suit brought by the insurer. *Stahl v. Hilderhoff*, 247 A.2d 582, 584 (Pa. 1968); *see also Harner v. Dougherty Funeral Home, Inc.*, 752 F. Supp. 690, 691–92 (E.D. Pa. 1990).

Here, the court can see no exception that would save RAD from the *res judicata* effects of a judgment in this action. At this stage, the interests of RAD, Travelers, and Lumbermens all align. They all seek to hold the defendant liable for the loss caused by the dry fire. In addition, it is clear that RAD, the insured, has authorized this suit, having joined in the action from the beginning. The interests of RAD and its insurers are all represented by the same attorney. The amount sought covers both the subrogated loss and the additional loss sustained by RAD that remains uninsured. Thus, this is not a situation where the insured is unaware of the action, is not represented by the insurer's attorney, and did not authorize suit to recover the loss sustained. *Compare Stahl*, 247 A.2d at 584 (holding the insurer's prior claim for property damages did not bar the insured's later claim for personal injury damages), *with Spinelli v. Maxwell*, 243 A.2d 425 (Pa. 1968) (holding the insurer's prior claim in trespass barred the insured's later action in trespass). Thus, in this case the general rule of privity applies.

In light of the likely *res judicata* effects of a judgment in this court, RAD's ability to fully protect its interest in the second action is highly suspect. RAD is clearly a necessary party to this action in light of these considerations. *Cf.*

14

*Aetna*, 338 U.S. at 381–82 (1949) (finding a partially subrogated insured to be a necessary party in tort actions brought against the United States); *Generali-U.S. Branch v. Ransdell*, No. 13-2113-CIV, 2013 WL 5230032, at *2 (S.D. Fl. Sept. 16, 2013) (same in private action brought in federal court on the basis of diversity); *Axis Ins. Co. v. Hall*, 287 F.R.D. 110, 114 (D.Me. 2012) (same); *Universal Underwriters*, 2001 WL 1175146, at *2 (same).

### ii. RAD is an indispensable party to this action.

RAD is also an indispensable party to this action. A party is indispensable if "in the circumstances of the case [they] must be before the court." *Zambelli*, 592 F.3d at 421 (quoting *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1011 (3d Cir. 1987)). Rule 19 provides four factors for a court to consider in determining whether or not a required party is indispensable as follows:

> (1) the extend to which a judgement rendered in the person's absence might prejudice that person or existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

15

FED. R. CIV. P. 19)b). These factors favor dismissal in the absence of RAD.

The first factor "overlaps considerably with the Rule 19(a) analysis." *Gen. Refractories Co. v. First State*, 500 F.3d 306, 320 (3d Cir. 2007) (quoting *Gardiner v. V.I. Water & Power Auth.*, 145 F.3d 635, 641 n. 4 (3d Cir. 1998)). Generally, if preclusion principles could be used to impair the absent party's interest, that party is required in light of the first factor. *See Janney Montgomery Scott, Inc. v. Shephard Niles, Inc.*, 11 F.3d 399, 410 (3d Cir. 1993). The first factor weighs highly in favor of dismissal to allow the state action to proceed on behalf of all plaintiffs. The preclusive effects of a judgment in this court would impair RAD's ability to protect its interest in its uninsured loss in the state action.

With respect to the second factor, the court can see no way to ward against the potential prejudice to RAD, nor have the parties offered an option for the court's review. There is no remedy this court can fashion in advance. Thus, the second factor also favors dismissal.

The third factor also favors dismissal. This factor "allows the court to consider whether the relief it grants will prove an adequate remedy for the plaintiff." *Gen. Refractories*, 500 F.3d at 320–21. However, it also "refer[s] to [the] public stake in settling disputes by wholes" and the need for "complete, consistent, and efficient settlement of controversies." *Patterson*, 390 U.S. at 111. Where the insured is seeking only a small loss, the actual risk of

duplicative litigation will be low, a factor the court may consider. *See Axis*, 287 F.R.D. at 116 (finding that the third factor weighed in favor of allowing the action to proceed without the insured where the insured was only seeking a $5,000.00 uninsured loss).

Here, any judgment, while satisfactory to the remaining plaintiffs if they were to succeed, would not resolve the whole dispute, nor would be an efficient use judicial resources by any means. In addition, RAD has already initiated an action in state court and it is highly likely that RAD will continue that action if this court were to drop RAD as a party. RAD's uninsured loss is over $400,000.00, a substantial loss. At this early stage, dismissal to resolve the entire dispute in one forum as opposed to two would lead to a more adequate judgment with respect to all parties interested in recovery.

With respect to the fourth factor, RAD has already initiated a state court action, though a complaint has not been filed. The filing of the state court action has tolled the statute of limitations. *See Lamp v. Heyman*, 366 A.2d 882, 885–86 (Pa. 1976). Upon filing of a complaint, the insurers might be included in the state action even though it is in the name of the insured alone. *See Green v. Daimler Benz*, AG, 157 F.R.D. 340, 342 (E.D. Pa. 1994) (explaining that under Pennsylvania Rule of Civil Procedure 2002 the insurer may sue in the name of the insured); *Wolf v. Allegheny Cty.*, 281 A.2d 82, 85 (Pa. Commw. Ct. 1971) (same). Thus, the plaintiffs are not left without a remedy if the court deems RAD indispensable and this action is dismissed. The fourth

factor favors dismissal. Thus, all four factors in Rule 19(b) favor dismissal. In light of this, the court finds that RAD is indispensable to this action and that it cannot proceed in RAD's absence.

The plaintiff cites and relies upon *United States v. Aetna Casualty & Surety Co. ("Aetna")*, 338 U.S. 366 (1949) for the proposition that a partially subrogated insured is never an indispensable party. In *Aetna*, the Supreme Court of the United States stated that a partially subrogated insured was a necessary party under the version of Rule 19 in effect at the time. 338 U.S. at 381. The Court also explained that neither the insured or insurer were indispensable parties under the common law test stated in *Shield v. Barrow*, 58 U.S. (17 How.) 130 (1854). *Id.* at 382 n. 19. In line with this conclusion, the Court also stated that a court could proceed with litigation even if the insured and insurer could not be joined. *Id.* at 383.

Although *Aetna* supports the plaintiffs' position, as courts have noted, this case is no longer dispositive on the issue of joinder based on the 1966 amendments to the rule. *See Generali-U.S. Branch*, 2013 WL 5230032, at *2; *Axis*, 287 F.R.D. at 114; *State Farm Fire & Cas. Co. v. Elextrolux Home Prod., Inc.*, No. 11 C 8946, 2012 WL 1287698, at *2 (N.D. Ill. April 16, 2012); *Allwaste Env. Servs./N. Atl., Inc. v. Pastore*, 911 F. Supp. 29, 32 (D. Me. 1996); *Potomac Elec. Power. Co. v. Babcock & Wilcox Co.*, 54 F.R.D. 486, 492–93 (D.Md. 1972). Moreover, the facts in *Aetna* are not identical to the facts here and it holds less persuasive weight than the plaintiffs suggest in their brief.

The cases presented to the Court in *Aetna* for review involved the following: (1) a case with a fully subrogated/assigned claim against the United States; (2) a case with a partially subrogated claim where both the insured and insurer had received a judgment in the same forum against the United States; and (3) two cases with partially subrogated claims against the United States where the subrogees sought recovery but not the insured subrogors. *Aetna, 338 U.S. at 368–69*. The exact question certified to the Court was whether or not a subrogee/insurer could sue the United States under the then Federal Tort Claims Act in light of an anti-assignment statute barring the recovery of assigned claims. *Id.* at 367–68. The court answered that question in the affirmative and proceeded to explain what parties were the real parties in interest under Federal Rule of Civil Procedure 17(a). *Id.* at 380–81. After explaining that the real parties in interest included the insured and insurer in partially subrogated claims, the Court, in a footnote, explained that the insured and insurer were "clearly not 'indispensable' parties." *Id.* at 382 n. 19.

As an initial matter, much of the Court's explanation of joinder and Rule 19 in *Aetna* is dicta. More importantly, the court was not dealing with a jurisdictional issue or with diversity cases for that matter, but with claims brought under the Federal Tort Claims Act. Its application to questions of jurisdiction is, thus, highly suspect. Lastly, in none of the cases presented to the court was an insured/subrogor actually seeking recovery in an alternative forum, as is the case here.

There do remain courts, including the Court of Appeals for the Second Circuit, who appear to apply the joinder statements in *Aetna* as a fixed rule, but this application of *Aetna* is suspect. *E.g., St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 81 (2d Cir. 2005), *Travelers Commercial Ins. Co. v. Hansen*, No. 16-cv-01123-LB, 2016 WL 1745818, *4 (N.D. Cal. May 3, 2016); *AGSC Marine Ins. Co. v. Spectrum Underground, Inc.*, No. 8:12-cv-474-T-30TGW, 2012 WL 2087441, at *1 (M.D. Fl. June 8, 2012). The courts that do apply *Aetna* for Rule 19 purposes do not assess its weight and hold little persuasive value for this reason. They do not engage in any substantive analysis of the 1966 amendments to Rule 19 and subsequent changes in the law, nor do they provide a thorough analysis of Rule 19 in its current form. Those that recognize the 1966 amendments simply rely on the recognition that the amendments did not alter the underlying pre-amendment principles of Rule 19. *See, e.g., Universal Builders Supply*, 409 F.3d at 81 (citing *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 117 n. 12 (1968) (quoting the Advisory Committee Notes to Rule 19)). While this is true, this reasoning does not account for the most important purpose of the amendments which was to do away with the technical classifications of "necessary" and "indispensable" parties and to, instead, require that the court engage in practical considerations and a case-by-case analysis. *See Patterson*, 390 U.S. at 117 n. 12. It is this approach that the court must adhere

to, not a rule regarding what parties are "indispensable" as a broad and generalized proposition.

The court agrees with those courts that have found that *Aetna* is not dispositive on the issue of whether or not a insured/subrogor is an indispensable party under Rule 19. The amendments and the current rule clearly require that a finding of indispensability be determined on a case-by-case basis using the factors set forth in the rule. *Steel Valley Auth.*, 809 F.2d at 1011; *Axis*, 287 F.R.D. at 114–15. It is these factors that guide the courts analysis and lead to the conclusion that RAD is an indispensable party that cannot be dropped pursuant to Rule 21. As such, the action cannot proceed in RAD's absence and the complaint must be dismissed.[3]


## IV.   CONCLUSION

For the reasons set forth above, the defendant's motion to dismiss, (Doc. 8), will be **GRANTED**. The plaintiffs' complaint, (Doc. 5), will be **DISMISSED WITHOUT PREJUDICE.** An appropriate order shall issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: June 20, 2017**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2016 MEMORANDA\16-2138-01.wpd

---

[3] The defendant's remaining arguments will not be addressed as they are now moot.